UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DH CAPITAL LLC,

                                 Plaintiff,

        – against –

XANADOO, LLC,

                                Defendant.

------------------------------------------------------------X

07 CIV. 5579

**COMPLAINT**

Jury Trial Demanded

      Plaintiff DH Capital, LLC ("DH"), by and through its attorneys, Friedman Kaplan Seiler & Adelman LLP, alleges upon personal knowledge as to itself and its own conduct and upon information and belief as to all other matters, as follows:

### Nature of the Action

      1.     This is an action for breach of contract, necessitated by the failure of defendant to compensate plaintiff, an investment banking firm, as required by the terms of an engagement agreement. Under the engagement agreement, which by its terms is governed by New York law, plaintiff was retained in connection with a transaction that would result in an equity or debt investment in defendant. The engagement agreement provided that if a transaction occurred during the exclusivity period set forth in the agreement, plaintiff would be entitled to a fee based on the size of the transaction. Although defendant recently completed a $30 million financing transaction, it wrongly has refused to compensate plaintiff pursuant to the terms of the agreement.

469882.1

## Jurisdiction and Venue

2. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332.

3. This District is the proper venue for this action pursuant to 28 U.S.C. § 1391 because Xanadoo is subject to personal jurisdiction in this District and therefore is deemed to reside in this District, and substantial part of the events or omissions giving rise to this action occurred in this District.

## The Parties

4. DH Capital LLC ("DH") is a limited liability company organized and existing pursuant to the laws of the State of New York, with its principal place of business at 1350 Avenue of the Americas, Suite 1145, New York, New York 10019. DH provides private investment banking services, including private capital placements and financial advisory services, to the media, internet, and telecommunications industries.

5. Xanadoo, LLC ("Xanadoo") is a limited liability company organized and existing pursuant to the laws of the State of Delaware, with its principal place of business at 225 City Line Avenue, Suite 200, Bala Cynwyd, Pennsylvania 19004. Xanadoo provides wireless internet access and broadband communications to residential and business subscribers. Xanadoo regularly does business in New York, including by transacting business with DH, and by holding a 700 MHz license from the FCC that covers the New York City MEA ("Major Economic Area") of some 30 million people.

# FIRST CAUSE OF ACTION
## (Breach of Contract)

**DH and Xanadoo's Agreement**

6. On or about June 26, 2006, DH and Xanadoo entered into an Engagement Agreement (the "Agreement"), setting forth the terms under which DH would be retained and compensated by Xanadoo in connection with an investment in Xanadoo by a third party. (A copy of the Agreement is attached as Exhibit A.)

7. The Agreement states that DH would assist Xanadoo "with regard to the initiation of potential transactions whereby another party or parties may make an equity or debt financing, or combination thereof, in [Xanadoo]." (Ex. A at 1.)

8. Under the Agreement, the "Exclusivity Period" during which DH would earn a fee was to run a minimum of six (6) months from the date of the Agreement, i.e., through December 26, 2006, "unless active negotiations [were] then in progress between [Xanadoo] and a party or parties, in which event the Exclusivity Period [would] be extended only with respect to such party or parties until the termination of any such negotiations." (*Id.*)

9. The Agreement provides that if Xanadoo "consummate[d], directly or indirectly, a Transaction with any party or party prior to the expiration of the Exclusivity Period," DH would be compensated in an amount to be determined by the following formula:

- Five percent (5.0%) of the first $10,000,000 in Transaction Consideration . . .; plus

- Four percent (4.0%) of the next $10,000,000 in Transaction Consideration; plus

3

- Three percent (3.0%) of any Transaction Consideration greater than $20,000,000.

(Ex. A at 2, ¶ C.)

10. This compensation was to be reduced in the event that a Transaction took place with certain "Company Identified Investor Parties" (and their respective affiliates) who were already known to Xanadoo at the time of the Agreement (*Id.*) The reduction was 50% if the Transaction occurred with a Company Identified Investor Party before DH prepared and distributed a descriptive memorandum to the potential investors, or 25% if such a Transaction occurred after the distribution of such a memorandum.

**DH's Negotiations with Post Advisory Group**

11. As part of its efforts on Xanadoo's behalf, DH entered into negotiations with Post Advisory Group, LLC ("Post"), an affiliate of one of the "Company Identified Investor Parties about the possibility of Post participating in a Transaction. These negotiations began before the end of the initial six-month Exclusivity Period provided for in the Agreement. Once negotiations were underway, DH provided Post with a copy of the descriptive memorandum.

12. Post's negotiations actively continued with Xanadoo (directly and via DB) through May 2007, when Xanadoo issued $30,000,000 of debt in the form of Senior Secured Notes which were purchased by Post.

13. The $30,000,000 debt issuance was a Transaction under the Agreement.

14. Xanadoo has failed and refused to compensate DH.

15. Xanadoo's failure and refusal to compensate DH for the Transaction with Post is a breach of its contractual obligations to DH under the Agreement.

16. DH has satisfied its obligations under the Agreement.

17. As a result of Xanadoo's breach, DH has suffered damages of $900,000, constituting the amount it should have received from Xanadoo under the Agreement in connection with the Transaction with Post.

## SECOND CAUSE OF ACTION
(Recovery of Attorney's Fees and Expenses)

18. DH repeats and re-alleges paragraphs 1 through 17 above as though fully restated herein.

19. The Agreement obligates Xanadoo to reimburse DH for "any legal or other expenses . . . reasonably incurred by [DH] arising out of or in connection with any action or claim in connection with" the Agreement, "including for the recovery of any fees to which [DH is] reasonably entitled under this Agreement." (Ex. A at 4, ¶ E.)

20. As a result of Xanadoo's refusal to pay DH the compensation to which it is entitled under the Agreement, DH has been forced to incur legal and other expenses.

21. Pursuant to the Agreement, Xanadoo is liable to DH for such legal and other expenses.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands the following:

    (a)    judgment against defendant in the amount of $900,000, together with pre- and post-judgment interest thereon;

    (b)    judgment against defendant for the amount of legal and other expenses incurred by plaintiff due to defendant's breach, in an amount to be determined at trial;

    (c)    the costs and disbursements of this action; and

    (d)    such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
          June 11, 2007

FRIEDMAN KAPLAN
SEILER & ADELMAN LLP

_____
Lance J. Gotko (LG-5443)
1633 Broadway
New York, NY 10019-6708
(212) 833-1100

*Attorneys for DH Capital LLC*

# EXHIBIT A



# DH CAPITAL, LLC

# ENGAGEMENT AGREEMENT

June 21, 2006

Mr. Howard Verlin
Executive Vice President
Xanadoo, LLC
225 City Line Avenue
Suite 200
Bala Cynwyd, PA 19004

Dear Howard:

Xanadoo, LLC (together with its subsidiaries, the "Company") has requested the assistance of DH Capital, LLC ("DH Capital") with regard to the initiation of potential transactions whereby another party or parties may make an equity or debt investment, or combination thereof, in the Company whether by way of secured or unsecured financing, refinancing, purchase of capital stock or otherwise (collectively, "Transactions"); provided, however, the definition of "Transactions" shall specifically exclude (i) the transactions listed on Attachment A to this Agreement and (ii) transactions involving the use of intermediaries or underwriters to effect such Transactions.

DH Capital agrees to render such assistance upon the terms and conditions and in consideration of the compensation hereinafter set forth as follows:

    A.    The Company hereby authorizes DH Capital and DH Capital hereby agrees for a period of six (6) months from the date hereof (the "Exclusivity Period") to initiate discussions on behalf of the Company on an exclusive basis with other parties with respect to their potential interest in effectuating a Transaction. The authority herein granted to DH Capital shall terminate at the end of the Exclusivity Period unless active negotiations are then in progress between the Company and a party or parties, in which event the Exclusivity Period shall be extended only with respect to such party or parties until the termination of any such negotiations.

          Notwithstanding the above, the Company can within the first 90 days of this Agreement terminate the Exclusivity Period by providing written notice to DH Capital of said action ("Termination Right"). Should the Company exercise its Termination Right, DH Capital will be immediately due consideration of $150,000. All other rights and obligations, including those noted in Section C below, will remain in force.

Pegasus Capital Raise
June 21, 2006
Page 2 of 7

---

B. The Company will not initiate, prior to the end of the Exclusivity Period, any discussions with regard to a Transaction, except through DH Capital. In the event the Company receives an inquiry from a party concerning a potential Transaction, it will promptly inform DH Capital of the potential Transaction and refer the inquiry to DH Capital.

C. If the Company consummates, directly or indirectly, a Transaction (i) with any party or parties prior to the expiration of the Exclusivity Period or (ii) within twelve (12) months after expiration of the Exclusivity Period ("Tail Period") with a party or parties identified or introduced by DH Capital to the Company during the Exclusivity Period (including those parties whose inquiries are required to be referred to DH Capital pursuant to Paragraph B above), the Company shall compensate DH Capital as follows:

- Five percent (5.0%) of the first $10,000,000 in Transaction Consideration (as defined below); plus
- Four percent (4.0%) of the next $10,000,000 in Transaction Consideration; plus
- Three percent (3.0%) of any Transaction Consideration greater than $20,000,000.

At the conclusion of the Exclusivity Period (or, if requested from time to time by the Company prior to the conclusion of such period), DH Capital will promptly provide a list of parties identified or introduced by DH Capital to the Company during the Exclusivity Period (including those parties whose inquiries are required to be referred to DH Capital pursuant to Paragraph B above).

DH Capital acknowledges that the Company has existing relationships with certain potential investors, the names of which are included on Attachment B to this Agreement (together with their respective affiliates, the "Company Identified Investor Parties"). Notwithstanding anything else to the contrary in this Agreement, DH Capital agrees that the Company shall be permitted to engage in discussions with the Company Identified Investor Parties with regard to a Transaction during the Exclusivity Period so long as the Company promptly informs DH Capital of such discussions. DH Capital and the Company agree that if the Company consummates a Transaction with a Company Identified Investor Party during the Exclusivity Period, DH Capital shall be entitled to receive the following compensation with respect to the portion of the Transaction attributable to the Company Identified Investor Parties: (i) should a Company Identified Investor Party participate in a Transaction that is consummated prior to the distribution of the descriptive memorandum then the above noted fees due to DH Capital attributable to the Company Identified Investor Parties shall be discounted by 50% and (ii) if a Company Identified Investor Party participates in a Transaction after the distribution of the descriptive memorandum, then the above noted fees due to DH Capital shall be discounted by 25%. DH Capital

Pegasus Capital Raise
June 21, 2006
Page 3 of 7

and the Company further agree that (i) if the Company consummates a Transaction with Company Identified Investor Parties during the Tail Period that DH Capital shall only be entitled to receive compensation with respect to Company Identified Investor Parties if the consummated Transaction is based upon a similar term sheet submitted to the Company during the Exclusivity Period and (ii), if clause (i) applies, DH Capital shall be entitled to receive with respect to the Company Identified Investor Parties who have consummated the Transaction only the compensation set forth in clauses (i) and (ii) of the prior sentence.

D.    (1) For purposes of determining the fee payable to DH Capital fee, the "Transaction Consideration" shall be equal to the sum of (i) cash received by the Company in connection with any Transaction; (ii) the fair market value of any securities received by the Company in connection with any Transaction; and (iii) the aggregate amount of any indebtedness of the Company to be assumed or guaranteed directly or indirectly by the party or parties with whom the Transaction is consummated.

     (2) The fee payable to DH Capital with respect to any consideration paid or received in a Transaction (whether paid or received at the closing of the Transaction ("Closing") or thereafter) shall be paid at Closing in cash.

     (3) DH Capital shall not be liable for, nor shall its compensation be reduced by, any obligation incurred by the Company or any other party for an introduction or other service in connection with a Transaction.

     (4) In order that DH Capital may accurately compute the fee to which it is entitled in the event of the consummation of a Transaction, the Company shall furnish DH Capital with copies of all definitive documentation relating to any Transaction hereunder, commencing with the inception of such Transaction through the Closing thereof. In addition, the Company shall furnish DH Capital with all such other information (including all relevant data with respect to contingent and/or deferred payments or other consideration) relating to such Transaction as DH Capital may from time to time request both preceding and subsequent to the Closing of any such Transaction.

     (5) In addition to any fees that may be payable to DH Capital hereunder and regardless of whether any Transaction is proposed or consummated, the Company hereby agrees, from time to time upon request, to reimburse DH Capital for all reasonable travel and other out-of-pocket expenses incurred in direct connection with any actual or proposed Transaction or otherwise arising out of DH Capital's engagement hereunder, but excluding all salary or overhead allocations. DH Capital shall submit an itemized list of all such expenses to the Company upon request.

E.    In the absence of willful misfeasance, gross negligence, or the reckless disregard of its

Pegasus Capital Raise
June 21, 2006
Page 4 of 7

---

obligations or duties hereunder on the part of DH Capital, neither DH Capital nor any partner, officer, director, employee, or stockholder of DH Capital shall be subject to any liability to the Company, for any act or omission in the course of, or in connection with, the rendering or providing of services hereunder. The Company shall indemnify and hold DH Capital, its partners and their officers, directors, employees and stockholders harmless against any losses, claims, damages or liabilities to which they or any of them may become subject in connection with the services referred to herein and shall reimburse them for any legal or other expenses (including the cost of any investigations) reasonably incurred by them arising out of or in connection with any action or claim in connection therewith, including for the recovery of any fees to which they are otherwise entitled under this Agreement, whether or not resulting in any liability; provided, however, (i) the Company shall not be liable in any such case to the extent that any such loss, claim, damage or liability results from a breach of DH Capital's obligations hereunder or from DH Capital's negligence or misfeasance in performing services hereunder or (ii) if there is a dispute between the Company and DH Capital regarding DH Capital's compensation under this Agreement or entitlement to indemnification and it is not determined by a court of competent jurisdiction or in arbitration that DH Capital is entitled to such compensation or indemnification, as applicable, the Company shall not be liable to reimburse DH Capital pursuant to this Paragraph E notwithstanding any other provision to the contrary herein. The provisions of this Paragraph E shall indefinitely survive the termination of the authority granted to DH Capital pursuant to Section A hereof.

F. No person or entity, other than the Company and its affiliates and their respective Board of Directors and representatives, shall be entitled to make use of, or rely upon, the advice, services or materials rendered or provided by DH Capital hereunder, and the Company and its affiliates shall not directly or indirectly disseminate, distribute or otherwise make available any advice, services or materials prepared by DH Capital without DH Capital's prior written consent.

G. This agreement (i) embodies the entire agreement and understanding of the parties hereto and supersedes all prior agreements and understandings, written or oral, relating to the subject matter hereof (except for the April 5, 2006 Confidentiality Agreement between Pegasus Communications Corporation and DH Capital, whose subject matter shall be governed by the terms of that agreement), and may not be modified or amended or any term or provision hereof waived or discharged, except in writing signed by the party against whom such modification, waiver or discharge is sought to be enforced; and (ii) is not assignable without the prior written consent of the other party; provided, however, that the provisions hereof shall inure to the benefit of, and be binding upon, each successor of the Company, whether by merger, consolidation, transfer of all or substantially all assets, or otherwise; (iii) has in all respects been duly authorized, executed, and delivered by and on behalf of the Company and DH Capital; and (iv) shall be interpreted, construed, enforced and governed by the applicable laws of the State of New York. Kindly acknowledge that the foregoing accurately reflects our agreement with respect to the subject matter thereof, by signing the enclosed copy

Pegasus Capital Raise
June 21, 2006
Page 5 of 7

of this letter and returning the same to the undersigned.

Very truly yours,

DH CAPITAL, LLC

By _____
Peter Hopper
President

THE FOREGOING IS ACCEPTED AND
AGREED TO AS OF THIS 26 DAY
OF JUNE, 2006.

XANADOO, LLC

By _____
Name: Howard E. Verlin
Title: EVP

Pegasus Capital Raise
June 21, 2006
Page 6 of 7

## Attachment A

Any secured financings or refinancings with First National Bank, including any financings related to the acquisition of the business of RioPlex Wireless, Ltd.

Loans pursuant to the Rural Utilities Service of the United States Department of Agriculture's Rural Broadband Access Loan and Loan Guarantee Program or any related or successor programs

Any equity or investment interest granted to Othal Brand or his affiliates in connection with the acquisition of the business of RioPlex Wireless, Ltd.

Pegasus Capital Raise
June 21, 2006
Page 7 of 7

## Attachment B – Company Identified Investor Parties

Peninsula Capital
Par Capital
Post Capital
Atticus
Columbia Capital
Georgetown Partners
Motorola Ventures
Intel Capital
Comcast and Comcast Ventures
Clearwire
Nextwave
Sprint & Sprint Ventures
Tim McDonald
Merrill Lynch
David Berkman